IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> McINERNEY BUILDERS INC., ) <br> ) <br> Defendant, ) <br> ) <br> CHUBB NATIONAL INSURANCE COMPANY a/s/o ) <br> Caryl Dillon, CARYL DILLON, ) <br> ) <br> Necessary Parties, and ) <br> ) <br> PEKIN INSURANCE COMPANY ) <br> ) <br> Potentially Interested Party ) | Case No. |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, SCOTTSDALE INSURANCE COMPANY ("Scottsdale"), by and through its undersigned attorneys, brings this Complaint for Declaratory Judgment against Defendant, McINERNEY BUILDERS INC. ("McInerney"), along with CHUBB NATIONAL INSURANCE COMPANY a/s/o Caryl Dillon ("Chubb"), CARYL DILLON ("Ms. Dillon") as necessary parties, and PEKIN INSURANCE COMPANY ("Pekin") as a potentially interested parties, and alleges and states as follows:

**STATEMENT OF THE CASE**

1. Scottsdale brings this insurance coverage action to obtain a declaratory judgment finding that it has no duty to defend or indemnify McInerney in connection with construction defect claims asserted against McInerney in the following two lawsuits currently pending in the Circuit Court of Cook County, Illinois: lawsuit captioned *Caryl Dillon v. McInerney Builders, Inc., et al.*, Cause No. 2021-L-004561 ("Ms. Dillon's Lawsuit"); and lawsuit captioned *Chubb National Insurance Company a/s/o of*

1

*Caryl Dillon v. McInerney Builders, Inc., et al.*, Cause No. 2021-L-009117 ("Chubb's Lawsuit"). Ms. Dillon's Lawsuit and Chubb's Lawsuit are collectively referred to herein as "the Underlying Lawsuits".

## JURISDICTION AND VENUE

2. Plaintiff Scottsdale is a corporation organized under the laws of Ohio with its principal place of business in Scottsdale, Arizona.

3. Defendant McInerney is a corporation organized under the laws of Illinois. It has a principal place of business in Chicago, Illinois.

4. Chubb is a corporation organized under the laws of Indiana, with its principal place of business in either Indianapolis, Indiana or Warren, New Jersey. Scottsdale does not seek any declaratory relief or any other recovery directly against Chubb in this action. Nevertheless, Chubb is named as a necessary party to the judicial declarations requested in Count I through Count VI because it may have an interest in the outcome of the judicial declarations by virtue of its status as the plaintiff in Chubb's Lawsuit. Pursuant to Rule 19 of the Federal Rules of Civil Procedure, Scottsdale names Chubb as a necessary party so that it may be bound by the judgment entered in this case. If Chubb executes a stipulation agreeing to be bound by any judgement herein, Scottsdale will voluntarily dismiss Chubb from this action.

5. Ms. Dillon is an individual domiciled in Chicago, Illinois. Scottsdale does not seek any declaratory relief or any other recovery directly against Ms. Dillon in this action. Nevertheless, Ms. Dillon is named as a necessary party to the judicial declarations requested in Count I through Count VI because she may have an interest in the outcome of the judicial declarations by virtue of her status as the plaintiff in Ms. Dillon's Lawsuit. Pursuant to Rule 19 of the Federal Rules of Civil Procedure, Scottsdale names Ms. Dillon as a necessary party so that she may be bound by the judgment entered in this case. If Ms. Dillon executes a stipulation agreeing to be bound by any judgement herein, Scottsdale will voluntarily dismiss Ms. Dillon from this action.

6. Pekin is a corporation organized under the laws of Illinois with its principal place of business in Pekin, Illinois. Scottsdale does not seek any declaratory relief or any other recovery directly against Pekin in this action. Nevertheless, Pekin is named as a party potentially interested in the judicial declaration requested in Count VII by virtue of its status, based on information and belief, as another insurer that is currently providing a defense to McInerney in Chubb's Lawsuit and/or Ms. Dillon's Lawsuit. Pursuant to Rule 19 of the Federal Rules of Civil Procedure, Scottsdale names Pekin as a necessary party so that it may be bound by the judgment entered in this case. If Pekin executes a stipulation agreeing to be bound by any judgement herein, Scottsdale will voluntarily dismiss Pekin from this action.

7. Jurisdiction in this matter is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1). Specifically, diversity jurisdiction exists because: (a) there is complete diversity of citizenship between Plaintiff, Scottsdale, on the one hand, and Defendants, McInerney, Chubb, Ms. Dillon and Pekin, on the other hand; and (b) the amount in controversy, including the potential costs of defending and indemnifying McInerney with regard to the Underlying Lawsuits well exceeds $75,000.

8. Venue is appropriate under 28 U.S.C. § 1391(b)(2), because McInerney is a resident of Illinois and Scottsdale's liability insurance policies were delivered to McInerney in Illinois. Moreover, a substantial part of the events or omissions giving rise to the Underlying Lawsuits occurred in this District; i.e., the construction project and real estate that is the subject of the Underlying Lawsuits is located in Chicago Illinois, and the Underlying Lawsuits are both pending in Illinois.

9. An actual justiciable controversy exists between Scottsdale, on the one hand, and McInerney, on the other hand, and by the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is vested with the power to declare the rights and liabilities of the parties and to grant such relief as it deems necessary and proper.

10. The Underlying Lawsuits only address allegations of construction defect against McInerney. The Underlying Lawsuits do not address any of the insurance coverage issues and disputes between Scottsdale and McInerney that are present in this litigation.

## SCOTTSDALE'S POLICIES

11. Scottsdale issued to McInerney the following commercial general liability policies:

| Policy No. | Policy Effective Dates |
|---|---|
| CPS2214951 | 5/5/2015 – 5/5/2016 |
| CPS2402246 | 5/5/2016 – 5/5/2017 |
| CPS2659300 | 5/5/2017 – 5/5/2018 |
| CPS3053981 | 5/5/2018 – 5/5/2019 |
| CPS3169469 | 5/5/2019 – 5/5/2020 |
| CPS7107489 | 5/5/2020 – 5/5/2021 |

12. A true and complete copy of Scottsdale's 2015-2016 Policy is attached hereto and incorporated herein as **Exhibit A**. Complete copies of Scottsdale's other policies issued to McInerney will be produced in Scottdale's Rule 26(a) Initial Disclosures.

13. Scottsdale's 2015-2016 Policy and all of Scottsdale's subsequent policies issued to McInerney contain a Commercial General Liability Coverage Form CG 00 01 04 13, which contains the following relevant Insuring Agreement for Coverage A – Bodily Injury and Property Damage Liability:

> **1. Insuring Agreement**
>
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. …
>
> * * *
>
> **b.** This insurance applies to "bodily injury" and "property damage" only if:
>
> **(1)** The "bodily injury" or "property damage is caused by an "occurrence" that takes place in the "coverage territory";
>
> **(2)** The "bodily injury or "property damage" occurs during the policy period…

14. The Commercial General Liability Coverage Form CG 00 01 04 13 in Scottsdale's 2015-2016 Policy and all of Scottsdale's subsequent policies issued to McInerney contains the following relevant exclusions:

> **2. Exclusions**
>
> This insurance does not apply to:
>
> **a. Expected Or Intended Injury**
>
> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.
>
> **b. Contractual Liability**
>
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
>
> **(1)** That the insured would have in the absence of the contract or agreement;
> …
> \* \* \*
>
> **k. Damage To Your Product**
>
> "Property damage" to "your product" arising out of it or any part of it.
>
> **l. Damage To Your Work**
>
> "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".
>
> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

\* \* \*

15. The Commercial General Liability Coverage Form CG 00 01 04 13 in Scottsdale's 2015-2016 Policy and all of Scottsdale's subsequent policies issued to McInerney contains the following relevant definitions:

> **SECTION V – DEFINITIONS**
>
> \* \* \*
>
> **13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

17. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it.

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

   \* \* \*

21. "Your product":

   a. Means:

      (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         (a) You;

         \* \* \*

   b. Includes:

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

      (2) The providing of or failure to provide warnings or instructions.

      \* \* \*

22. "Your work":

   a. Means:

      (1) Work or operations performed by you or on your behalf; and

      (2) Materials, parts or equipment furnished in connection with such work or operations.

   b. Includes:

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

      (2) The providing of or failure to provide warnings or instructions.

      \* \* \*

16. Scottsdale's 2015-2016 Policy and all of Scottsdale's subsequent policies issued to McInerney also include an endorsement titled FUNGI OR BACTERIAL EXCLUSION (CG 21 67 12 04), which states in relevant part:

6

    **A.**    The following exclusion is added to Paragraph 2. **Exclusions of Section I – Coverage A – Bodily Injury and Property Damage Liability**:

        **2.**    **Exclusions**

        This insurance does not apply to:

        **Fungi Or Bacteria**

        **a.**    "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

        **b.**    Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

        \* \* \*

    **C.**    The following definition is added to the **Definitions** Section:

        "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

17.    Scottsdale's 2015-2016 Policy and all of Scottsdale's subsequent policies issued to McInerney also include an endorsement entitled CONTINUING OR ONGOING DAMAGE EXCLUSION (GLS-281s (9-07)), which states in relevant part:

> The following is added to subsection **2. Exclusions** of **SECTION I—COVERAGE**:
> This insurance does not apply to "property damage" when any of the following apply:
>
> **Continuing Or Ongoing Damage**
>
> **1.**    The "property damage" first occurred, began to occur or is alleged to have occurred or been in the process of occurring, to any degree, in whole or in part, prior to the inception date of this policy.
>
> **2.**    The "property damage" is indiscernible from other damage that is incremental, continuous or progressive damage arising from an "occurrence" which first occurred, began to occur or is alleged to have occurred, to any degree, in whole or in part, prior to the inception date of this policy.

18. Scottsdale's 2015-2016 Policy and all of Scottsdale's subsequent policies issued to McInerney also include an endorsement entitled AMENDEMENT TO OTHER INSURANCE CONDITION ENDORSEMENT (GLS-152s (4-14) or GLS-152 (8-16)), which reads in relevant part:

> Condition **4. Other Insurance** of **Section IV – Commercial General Liability Conditions** is deleted in its entirety and is replaced by the following:
>
> **4. Other Insurance**
>
>    a. **Primary Insurance**
>
>       This insurance is primary except when **b.** below applies
>
>    b. **Excess Insurance**
>
>       **(1)** This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis:
>
>          \*   \*   \*
>
>          **(e)** That is valid and collectible insurance available to you under any other policy.
>
>       **(2)** When this insurance is excess, we will have no duty under **Coverages A** or **B** to defend the insured against any "suite" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.
>
>       **(3)** When this insurance is excess over other insurance, we will pay only the amount of the loss, if any, that exceeds the sum of:
>
>          **(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and
>
>          **(b)** The total of all deductible and self-insured amounts under all other insurance.
>
> If a loss occurs involving two or more policies, each of which states that its insurance will be excess, then our policy will contribute on a pro rata basis.

19. Scottsdale's 2018-2019 Policy and its 2019-2020 Policy issued to McInerney include an additional endorsement entitled EXCLUSION – CONTRACTORS AND SUBCONTRACTORS (GLS-100s (6-13)), which reads in relevant part:

> The following exclusion is added to **SECTION I—COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** … paragraph **2. Exclusions**:

8

This insurance does not apply to "bodily injury" [or] "property damage" … arising out of or caused by, in whole or in part:

**a.** Operations performed for or on behalf of any insured by any contractors or subcontractors;

**b.** Acts or omissions of any contractor or subcontractor in connection with a. above; or

**c.** The negligent:

**(1)** Hiring;
**(2)** Investigation;
**(3)** Supervision;
**(4)** Training; or
**(5)** Retention

of any contractor or subcontractor for whom any insured is or ever was legally responsible and whose operations, acts or omissions would be excluded by **a.** or **b.** above.

This exclusion applies to all sums you become legally obligated to pay that arise out of any claims or "suits" by any person or organization for "bodily injury" [or] "property damage" … and/or any obligation to share damages with or repay someone else who must pay damages because of the "bodily injury" [or] "property damage" ….

We will have no duty to settle any claim or defend any "suit" against the insured arising out of or in any way related to **a. b.** or **c.** above.

## ALLEGATIONS ASSERTED IN UNDERLYING LAWSUITS

20. Ms. Dillon filed her Complaint on May 4, 2021. A true and correct copy of Ms. Dillon's Complaint is attached hereto and incorporated herein as **Exhibit B**.

21. Chubb filed its Complaint as a subrogee of Ms. Dillon on September 13, 2021. A true and correct copy of Chubb's Complaint is attached hereto and incorporated herein as **Exhibit C**.

22. In the Underlying Lawsuits, Ms. Dillon and Chubb both generally allege the following allegations regarding the construction of Ms. Dillon's condominium unit:

a. In or about April 2012, McInerney obtained a permit to begin construction of a three-unit residential condominium building at 1350 West Diversey Parkway, Chicago, Illinois 60614 (the "Building"). (*See*, Ms. Dillon's Complaint, Exhibit B, ¶17; Chubb's Complaint, Exhibit C, ¶11).

    b. McInerney began marketing of the Building condominium units for sale to the general public in April 2012 and on or about December 7, 2012, Ms. Dillon and McInerney entered into a written contract for her purchase of the top unit in the three-unit Building. (*See*, Ms. Dillon's Complaint, Exhibit B, ¶ 17-18; Chubb's Complaint, Exhibit C, ¶15-16).

    c. As part of the Purchase Contract, McInerney agreed to construct the Building and unit consistent with and according to the specifications that were attached to the Purchase Contract. (*See*, Ms. Dillon's Complaint, Exhibit B, ¶19; Chubb's Complaint, Exhibit C, ¶17).

    d. Ms. Dillon closed on the purchase of her condominium unit on March 7, 2013, at which time, the roof decks at the Building were substantially installed but not yet completed. (*See*, Ms. Dillon's Complaint, Exhibit B, ¶21; Chubb's Complaint, Exhibit C, ¶18-19).

    e. McInerney and its subcontractors completed the construction of the Building and the roof decks shortly after the March 7, 2013 closing date. (*See*, Ms. Dillon's Complaint, Exhibit B, ¶22; Chubb's Complaint, Exhibit C, ¶20).

23. In the Underlying Lawsuits, Ms. Dillon and Chubb both generally allege the following allegations regarding the discovery of certain construction defects at Ms. Dillon's condominium unit:

    a. Approximately seven years after her condo unit purchase, Ms. Dillon noticed in July 2020 an "abnormal softness" in portions of the south roof deck and observed sagging of the center portion of the roof deck, which she communicated to McInerney. (*See*, Ms. Dillon's Complaint, Exhibit B, ¶24-25; Chubb's Complaint, Exhibit C, ¶22-23).

    b. On or about July 24, 2020, McInerney's carpentry subcontractor, KL Quality Construction, Inc. removed drywall from the ceiling of Dillon's bedroom, which was

10

       below the sagging observed on the roof deck, and exposed extensive mold growth and deterioration of the roof truss structure. (*See*, Ms. Dillon's Complaint, Exhibit B, ¶25; Chubb's Complaint, Exhibit C, ¶25-26).

    c.  Because of the severe deterioration and mold growth, Ms. Dillon was informed that her condominium unit was uninhabitable and unsafe and, based on that information, she vacated the unit. (*See*, Ms. Dillon's Complaint, Exhibit B, ¶25; Chubb's Complaint, Exhibit C, ¶27-28).

24.    In the Underlying Lawsuits, Ms. Dillon and Chubb both allege that the damage to the roof truss structure "was caused by inadequate ventilation and improper insulation in and around the Truss Cavity" which deviated from the engineering drawings for the Building. (*See*, Ms. Dillon's Complaint, Exhibit B, ¶28; Chubb's Complaint, Exhibit C, ¶31).

25.    Ms. Dillon and Chubb both allege the following specific deviations regarding the roof truss structure: the engineering drawings called for the installation of 11 dryer vents for roof ventilation, whereas no such vents were installed: and the engineering drawings called for installation of R-30 batten fiberglass insulation, whereas blown-in cellulose insulation was installed. (*See*, Ms. Dillon's Complaint, Exhibit B, ¶28-29; Chubb's Complaint, Exhibit C, ¶32-34).

26.    Ms. Dillon and Chubb both allege that the construction deviations allowed moist air to remain and created condensation in the Truss Cavity, which caused deterioration to the roof trusses and caused the accumulation of mold. (*See*, Ms. Dillon's Complaint, Exhibit B, ¶30; Chubb's Complaint, Exhibit C, ¶35).

27.    Ms. Dillon alleges in her Complaint that the above construction defects have caused damage to her condominium unit, damages to her personal property inside that unit and a diminution in the value of her unit. (*See*, Ms. Dillon's Complaint, Exhibit B, ¶30, 36.b, 36.c, and 36.d).

28. Ms. Dillon also alleges in her Complaint that she has been exposed to mold as a result of the building defects and that exposure caused her bodily injuries which required her to seek a medical diagnosis and treatment beginning in July 2020. (*See*, Ms. Dillon's Complaint, Exhibit B, ¶30-31).

29. Chubb alleges in its Complaint that it made certain payments to Ms. Dillon for repairs to her condominium unit and replacement of certain personal property located in her condominium unit pursuant to Chubb's first party property policy #1401930401. (*See,* Chubb's Complaint, Exhibit C, ¶3, 41, 44). Chubb further alleges in its Complaint that it is subrogated to Ms. Dillon's rights to pursue McInerney Because of Chubb's payments. (*See,* Chubb's Complaint, Exhibit C, ¶45).

30. McInerney forwarded Ms. Dillon's Complaint and Chubb's Complaint to Scottsdale with a request that Scottsdale defend and indemnify McInerney for the claims asserted by Ms. Dillon and Chubb in the Underlying Lawsuits.

31. Through written correspondence Scottsdale has denied any obligation to defend or indemnify McInerney in relation to the claims asserted by Ms. Dillon and Chubb in the Underlying Lawsuits.

32. Based on information and belief, the law firm of Keefe, Campbell, Biery & Associates has been defending McInerney in the Underlying Lawsuits.

33. The Underlying Lawsuits both remain currently pending against McInerney.

34. Based on information and belief, Ms. Dillon's Lawsuit is subject to a stay order that was entered in that case on or about November 19, 2021.

## COUNT I – DECLARATORY JUDGMENT
## NO DUTY TO DEFEND McINERNEY
## NO "OCCURRENCE"

35. Scottsdale incorporates by reference paragraphs 1-34 above as if fully stated herein.

36. The allegations in the Underlying Lawsuits do not allege an "occurrence" as that term is set forth in the Insuring Agreement (quoted above in Paragraph 13) and as that term is defined in Scottsdale's policies (quoted above in Paragraph 15).

37. Instead, the allegations in the Underlying Lawsuits allege damage to Ms. Dillon's condominium unit, as well as damage to her personal property inside that unit, that is the natural, ordinary and expected consequence of McInerney's alleged construction defects.

38. Because the Underlying Lawsuits do not allege an "occurrence", the Insuring Agreement in Coverage A of the Commercial General Liability Coverage Form CG 00 01 04 13 present in each and every Scottsdale Policy is not satisfied. Therefore, Scottsdale does not have an obligation to defend McInerney for the claims asserted against McInerney in the Underlying Lawsuits.

## COUNT II – DECLARATORY JUDGMENT
## NO DUTY TO DEFEND McINERNEY
## COVERAGE A EXCLUSIONS

39. Scottsdale incorporates by reference paragraphs 1-38 above as if fully stated herein.

40. To the extent that the Underlying Lawsuits may allege an "occurrence", the following exclusions in the Commercial General Liability Coverage Form CG 00 01 04 13 present in each and every Scottsdale Policy (quoted above in Paragraph 14) apply to bar coverage:

   a. Exclusion a. Expected or Intended Injury - because property damage and mold growth is the natural, ordinary and expected consequence of negligent construction work.

   b. Exclusion b. Contractual Liability – because Ms. Dillon and Chubb have alleged that McInerney breached contractual obligations and warranties in its deficient construction.

   c. Exclusion k. Damage to Your Product – because Ms. Dillon's condominium unit was McInerney's "product" that McInerney sold to Ms. Dillon.

   d. Exclusion l. Damage to Your Work – because the Building and Ms. Dillon's condominium unit was constructed by McInerney.

41. One or more of the above exclusions found in Coverage A of the Commercial General Liability Coverage Form CG 00 01 04 13 apply to preclude coverage under each and every Scottsdale Policy. Therefore, Scottsdale does not have an obligation to defend McInerney for the claims asserted against McInerney in the Underlying Lawsuits.

### COUNT III – DECLARATORY JUDGMENT
### NO DUTY TO DEFEND McINERNEY
### CONTINUING OR ONGOING DAMAGE EXCLUSION ENDORSEMENT

42. Scottsdale incorporates by reference paragraphs 1-41 above as if fully stated herein.

43. To the extent that the Underlying Lawsuits may allege an "occurrence", coverage for which is not otherwise excluded by the exclusions in the Commercial General Liability Coverage Form CG 00 01 04 13, coverage is nevertheless excluded by operation of the CONTINUING OR ONGOING DAMAGE EXCLUSION (GLS-281s (9-07)), which is present in all of Scottsdale's Policies (quoted above in Paragraph 17).

44. The endorsement excludes any progressive or continuously occurring property damage which begins prior to the policy period.

45. McInerney's construction of the Building and Ms. Dillon's condominium unit was completed in 2013 following Dillon's closing on her unit.

46. Ms. Dillon and Chubb both allege that the construction defects continuously caused ongoing moist air, condensation and deterioration of the roof trusses from the time of those defects during construction in 2013 until their discovery in July 2020.

47. Scottsdale's first policy period began in May 2015, two years after the construction of the Building and Ms. Dillon's condominium unit in 2013, and well after deterioration of the roof trusses had already begun.

48. Because this endorsement applies to preclude coverage in each and all of Scottsdale's Policies, Scottsdale does not have an obligation to defend McInerney for the claims asserted against McInerney in the Underlying Lawsuits.

### COUNT IV – DECLARATORY JUDGMENT
### NO DUTY TO DEFEND McINERNEY
### FUNGI OR BACTERIAL EXCLUSION ENDORSEMENT

49. Scottsdale incorporates by reference paragraphs 1-48 above as if fully stated herein.

50. To the extent that the Underlying Lawsuits may allege an "occurrence", coverage for which is not otherwise excluded by the exclusions in the Commercial General Liability Coverage Form CG 00 01 04 13, coverage is nevertheless excluded by operation of the FUNGI OR BACTERIAL EXCLUSION (CG 21 67 12 04) which is present in each and every Scottsdale Policy (quoted above in Paragraph 16).

51. This endorsement precludes coverage for "bodily injury" and/or "property damage" involving the presence of mold in a building, regardless of whether there were any other concurrent causes.

52. Both Ms. Dillon and Chubb allege that the construction defects caused mold growth which contributed to the deterioration of the truss structures.

53. Ms. Dillon further alleges that she suffered bodily injury due to her exposure to the mold growth.

54. Because this endorsement applies to preclude coverage under each and every Scottsdale Policy, Scottsdale does not have an obligation to defend McInerney for the claims asserted against McInerney in the Underlying Lawsuits.

### COUNT V – DECLARATORY JUDGMENT
### NO DUTY TO DEFEND McINERNEY
### EXCLUSION – CONTRATORS AND SUBCONTRACTORS ENDORSEMENT

55. Scottsdale incorporates by reference paragraphs 1-54 above as if fully stated herein.

56. To the extent that the Underlying Lawsuits may allege an "occurrence", coverage for which is not otherwise excluded by the exclusions in the Commercial General Liability Coverage Form CG 00 01 04 13, coverage is nevertheless excluded by operation of the EXCLUSION – CONTRACTORS AND SUBCONTRACTORS (GLS-100s (6-13) which is present in Scottsdale's 2018-2019 Policy and the 2019-2020 Policy (quoted above in Paragraph 19).

57. This endorsement precludes coverage for "bodily injury" and/or "property damage" arising out of or caused, in whole or in part, by operations performed by McInerney's subcontractors.

58. Both Ms. Dillon and Chubb allege in the Underlying Complaints that the construction defects at the Building were caused by operations performed by McInerney's subcontractors.

59. Because this endorsement applies to preclude coverage under Scottsdale's 2018-2019 Policy and the 2019-2020 Policy, Scottsdale does not have an obligation to defend McInerney under those policies for the claims asserted against McInerney in the Underlying Lawsuits.

## COUNT VI – DECLARATORY JUDGMENT
## NO DUTY TO INDEMNIFY McINERNEY

60. Scottsdale incorporates by reference Paragraphs 1-59 above as if fully stated herein.

61. Counts I through V above set forth independent reasons why Scottsdale does not have a duty to defend McInerney for the claims asserted against McInerney in the Underlying Lawsuits

62. Because Scottsdale has no duty to defend McInerney for the claims asserted against McInerney in the Underlying Lawsuits under any of the Scottsdale Policies, Scottsdale necessarily has no duty to indemnify McInerney for any judgment entered in or settlement reached in the Underlying Lawsuits.

## COUNT VII – DECLARATORY JUDGMENT
## PLEADING IN THE ALTERNATIVE
## SCOTTSDALE IS EXCESS TO ANY OTHER INSURER

63. Scottsdale incorporates by reference Paragraphs 1-62 above as if fully stated herein.

16

64. Pleading in the alternative to Counts I through VI above, to the extent that the Underlying Lawsuits may allege an "occurrence" coverage for which is not otherwise excluded by any of the above exclusions, Scottsdale still does not have any current obligation to defend and/or indemnify McInerney due to the operation of the AMENDEMENT TO OTHER INSURANCE CONDITION ENDORSEMENT that is present in each and every Scottsdale policy (quoted above in Paragraph 18).

65. This endorsement renders the coverage that might be provided by Scottsdale's Policies excess to any other valid and collectible insurance that is available to McInerney.

66. Based on information and belief, Pekin is currently defending McInerney in relation to the claims asserted in Chubb's Lawsuit and/or Ms. Dillon's Lawsuit under a reservation of rights.

67. Pleading in the alternative to Count I through Count VI above, any coverage potentially available under one or more of Scottsdale's policies is excess over the valid and collectible coverage that Pekin is providing to McInerney for the Underlying Lawsuits.

WHEREFORE, Plaintiff, SCOTTSDALE INSURANCE COMPANY ("Scottsdale"), respectfully requests this Court enter a declaratory judgment in its favor and against Defendants, McINERNEY BUILDERS, INC. ("McInerney"), CHUBB NATIONAL INSURANCE COMPANY a/s/o Caryl Dillon ("Chubb") and CARYL DILLON ("Ms. Dillon"), declaring, adjudging and decreeing as follows:

A. Scottsdale has no duty to defend McInerney under any of the Scottsdale Policies for any of the claims asserted by Ms. Dillon and/or Chubb against McInerney in the Underlying Lawsuits;

B. Scottsdale has no duty to indemnify McInerney under any of the Scottsdale Policies for any of the claims asserted by Ms. Dillon and/or Chubb against McInerney in the Underlying Lawsuits;

C. In the alternative, even if McInerney's argument that Scottsdale owes any coverage is accepted, any such coverage available under one or more of Scottsdale's policies is excess over the coverage that Pekin provides to McInerney for the Underlying Lawsuits, such that Scottsdale does not have any current duty to defend or indemnify McInerney for any of the claims asserted by Ms. Dillon and/or Chubb against McInerney in the Underlying Lawsuits.

D. Scottsdale is entitled to such other and further relief, including court costs, as this District Court deems appropriate.

DATED: April 20, 2022

Respectfully submitted,

**STONE & JOHNSON, CHTD**

By: /s/ Dawn M. Gonzalez
Attorney for Scottsdale Insurance Company

Dawn M. Gonzalez, Esq.
STONE & JOHNSON, CHTD
111 West Washington, Suite 1800
Chicago, Illinois 60602
Phone: 312-332-5656
dgonzalez@stonejohnsonlaw.com